## VAN GORDER ET AL. *v.* BOARD OF SUPERVISORS OF ELECTIONS OF BALTIMORE COUNTY

[No. 198, September Term, 1962.]

438

*Decided, per curiam, September 11, 1962.*

*Opinion filed October 9, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, PRESCOTT, HORNEY, MARBURY, and SYBERT, JJ.

*J. Leo McCormick, Jr.,* for appellants.

*John J. Caslin,* for appellee.

PRESCOTT, J., delivered the opinion of the Court.

Citizens and voters of Baltimore County appeal from an order of the Circuit Court for said county sustaining a demurrer to

their amended petition for a writ of *mandamus,* which sought to compel the members of the Board of Supervisors of Elections (Board) to accept the sum of $1,920 in full payment for costs of the publication of nominating petitions for appellants.

Appellants name four points as "questions in controversy," but they adopt the rather unusual procedure in three of them of referring to several paragraphs of their petition, and then asking if the allegations of these paragraphs be proven, would they "constitute a legal cause of action"? The real question to be determined is whether the allegations of the petition, considered as a whole, are sufficient to withstand appellee's demurrer. We shall, therefore, consider them as a whole, and point out why the trial court was correct in his ruling.

For the purposes of this case, we shall assume, without deciding, that a *mandamus* proceeding is a proper one to obtain relief from officials, who are entrusted with discretion in the performance of their duties, but who exercise that discretion in an arbitrary and capricious manner.

The amended petition, in substance, alleges: that petitioners are residents and voters of Baltimore County, and "defendants" constitute the Board of Election Supervisors; that on April 30, 1962, petitioners proceeded to the office of the defendants for the purpose of submitting over 10,000 signatures on nominating petitions; that they were treated rudely, and required to undergo certain indignities, but they filed their nominating petitions; that on May 25, 1962, they received telegrams (presumably from the defendants) requesting $9,204 on, or before, May 28 for the publication of the names; that petitioners filed a petition for a writ of *mandamus,* to compel the defendants to publish the names of the signatures in accordance with the statute; and that Judge Raine passed an order in which he directed the defendants to publish the names by a certain date, and he stated in said order, "nominees [apellants] will be responsible for the reasonable costs of publication consistent with Section 68 of Article 33" of the Code.

The petition further alleges: that prior to the filing of their petitions they "did make inquiry and were advised that the cost of publication * * * would not exceed $2,000.00"; that they had spoken to counsel of the Board and he had stated the

Jeffersonian or County Paper (county papers) would be satisfactory; that two members of the Board threatened to inflict physical injury on petitioners' counsel; that the Board arbitrarily and capriciously did cause the names to be published in the Sunpapers for $9,204, "with full knowledge that the cost of the same publication could have been secured from the Jeffersonian for $1,680.00 or the County Paper for $1,920.00"; and that the petitioners had tendered $1,920 to the Board in full payment of publication costs, but this sum had been refused. The petition prayed that the Board be commanded to accept the $1,920 in full payment from appellants for the publication of the nominating petitions.

Code (1962 Cum. Supp.), Article 33, § 68 reads, in part, as follows:

> "Where such [nominating] petitions are filed with the boards of supervisors of elections, said board within thirty days after the filing of such petition shall cause to be published at least once in a newspaper of general circulation throughout the county, or the City of Baltimore, as the case may be, the names of all of the signers of any such petition, together with an explanation of the nature of the petition to which such persons' names are affixed. The cost of such publication shall be paid by the nominee whose name is thereby entered on the ballot; * * *."

There can be little doubt that the wording of this section vests a certain amount of discretion in the Board in selecting the newspaper in which to publish the names, and the phraseology "at least once in a newspaper" indicates that under some circumstances it may be proper for the Board to make more than one publication of the names. There is no requirement that the contract for publication be submitted to public bidding, or that the cheapest offer for publication be accepted. The requirements of the statute particularly pertinent here require, at least, one publication, within 30 days after the filing of the petition, of *all* the signers on the petition and an explanation of the nature of said petition in a newspaper of general circulation in Baltimore County. It is conceded that the Board made

one, and only one, publication in the Sunpapers. It has been stated that whether a newspaper is one of "general circulation" is a matter of substance, not merely of size: it is one that circulates among all classes and is not confined to a particular class or calling in the community, and it is a term generally applied to a newspaper to which the general public will resort in order to be informed of the news and intelligence of the day, editorial opinion, and advertisements, and thereby to render it probable that the notices or official advertising will be brought to the attention of the general public. 66 C.J.S., *Newspapers,* § 4, p. 26.

A reading of the allegations of the amended petition, as they are outlined above, discloses that there is no allegation that the Jeffersonian or the County Paper were newspapers of "general circulation" in a legal sense (we do not intimate that they are or that they are not) ; nor is there any allegation as to the comparable circulations of these newspapers in Baltimore County with the circulation of the newspaper in which publication was actually made, so that the factor of disparity of costs, as it relates to the question of arbitrary action by the Board, may be weighed and considered. The mere fact that the Board incurred an expense for the publication in excess of the amount that two county newspapers would have inserted the notice in their columns for does not, *ipso facto,* show capricious conduct on the part of the Board. Baltimore County has a population of some five hundred thousand people; it is important that any official public notice be brought to the attention of, at least, a substantial portion of the general public; therefore, it is necessary to know the respective advantages and disadvantages of the different publications in determining whether the action of the Board was whimsical and irresponsible. In addition, the allegation that appellants "did make inquiry and were advised that the cost of publication * * * would not exceed $2,000" can hardly be considered a clear and direct allegation of fact in support of a petition for *mandamus.* Appellants have laid great stress on the portion of Judge Raine's order quoted above which stated that the "nominees will be responsible for the reasonable costs of publication consistent with Section 68 of Article 33," arguing that this order limited

the obligation of the appellants to the *reasonable* costs of publication and no more. We think that this portion of Judge Raine's order is no more than a repetition of the meaning of the statute: it is extremely unlikely that the legislature anticipated that nominees should be required to pay an *unreasonable* amount for costs under any circumstances. The allegation of the statement made by the Board's counsel with reference to other papers being "satisfactory for publication" has no binding effect on the Board in the absence of a concurrence of a majority of the Board; and the allegation that the appellees did "arbitrarily, capriciously and dogmatically" cause the names to be published amounts to no more than a conclusion of the pleaders. *Brack v. Wells,* 184 Md. 86, 90, 40 A. 2d 319. We hold that Judge Turnbull was correct in sustaining the demurrer without leave to amend.

As the *per curiam* order heretofore filed affirming the order of the trial court did not direct the payment of costs, it is ordered that the appellants pay the same.