PARKER *v.* BOARD OF ELECTION SUPERVISORS
ET AL.

[No. 245, September Term, 1962.]

*Decided, per curiam, October 18, 1962.*

*Opinion filed December 5, 1962.*

128

The cause was argued before HENDERSON, HAMMOND, PRES-COTT, HORNEY and MARBURY, JJ.

*W. Giles Parker, pro se,* for the appellant.

*J. Leo McCormick, Jr.,* for the intervening defendants, part of the appellees.

Submitted on brief by *John J. Caslin* for the Board, the other appellee.

PRESCOTT, J., delivered the opinion of the Court.

We, heretofore, filed a *per curiam* order in which we sustained the chancellor in his dismissal of appellant's bill of complaint. We now state the reasons for our ruling.

Judge Raine, in the trial court, based his decision to dismiss the bill of complaint, solely, upon the ground of laches; hence there is but one question for our determination.

Pursuant to the Code (1957), Article 33, Section 67 (f), appellant filed a bill of complaint on September 25, 1962, alleging that certain nominating petitions filed with the Board of Supervisors of Elections were defective due to the lack of a sufficient number of legitimate signatures appended thereto, as required by the statute, and because of the alleged presence in the nominating petitions of numerous fraudulent affidavits. Ten individuals, who had filed the nominating petitions on April 30, 1962, filed a demurrer as intervening defendants. After a hearing on October 8, 1962, the court below sustained the demurrer. This appeal followed.

As required by Section 68 of said Article, the nominating petitions were published in the Evening Sun on May 30, 1962, with the cost of some $8,500 being charged to the nominees. The money for publication of the petitions, which was re-

quired to be paid before the names were placed upon the ballot, was paid to the Board by the nominee-appellees on August 31, and September 5, 1962.

Appellant wrote a letter and delivered the same, in person, on September 5, 1962, to the Board, questioning the adequacy of the certifications of nominations under the provisions of Section 67 (f). He addressed another letter to the Board on September 13, 1962, calling attention to the matter again and referring to *Tyler v. Secretary of State,* 229 Md. 397, 184 A. 2d 101, (an election case decided by the Court on September 11, 1962), as putting a "completely different light" on the situation. The Board, on September 24, 1962, notified appellant that it was going to place the names of the nominees on the ballot, and this suit followed.

Appellant tries to excuse his tardiness in questioning the nominating petitions because: (1) payment was not made for publication by the intervening defendants until August 31 and September 5, 1962; (2) other legal proceedings were pending; (3) there was no time limitation in the statute (Section 67 (f)) for questioning the petitions.

There had been prior litigation concerning the cost of publication of the nominating petitions for the intervenors. Said litigation was concluded on September 11, 1962, when this Court upheld the right of the Board to collect the full amount of the cost of publication from the candidates. *Van Gorder v. Board of Sup'rs,* 229 Md. 437, 184 A. 2d 835. As noted above, the intervenors in the present case had paid their costs of publication before *Van Gorder* had been ultimately decided.

The intervenors having paid the aforementioned costs and the Board having concluded that the petitions were adequate, the Board proceeded with the printing of the absentee ballots and the preparation of the voting machines with the names of the intervenors included thereon. Had the printing been withheld any longer, the ballot might not have been ready for the November 6th election.

The appellant bases his first two reasons for delay on the time of payment by the intervenors and the pending litigation. The court below did not believe these reasons were sound.

Judge Raine said: "* * * [The] nomination petitions were filed on April the 30th, published in the newspapers on May the 30th, [and] intervening defendants were required to pay for the publication * * *. In any event, a delay from April the 30th to September the 5th is an unreasonable delay prejudicing the rights of these intervening defendants." We agree.

In regard to appellant's third excuse for delay (no time limitation in the statute), the lower court said: "* * * [the statute] states no time limit within which the complaint by a qualified voter to the Election Board must be made, but certainly it is implicit in that statute that the action pursuant thereto must be taken within a reasonable time * * *." Again, we agree.

This Court has had occasion to deal with the question of laches many times. It is a defense in equity against stale claims, and is based upon grounds of sound public policy by discouraging fusty demands for the peace of society. There is no inflexible rule as to what constitutes, or what does not constitute, laches; hence its existence must be determined by the facts and circumstances of each case. *Brashears v. Collison,* 207 Md. 339, 115 A. 2d 289. The devolution of time, alone, does not constitute laches;[1] it is but one of the many circumstances from which a determination of what constitutes an unreasonable and unjustifiable delay may be made.[2] In a purely equitable action, a lapse of time shorter than the period of limitations may be sufficient to invoke the doctrine; and, where the delay is of less duration than the statute of limitations, the defense of laches must include an unjustifiable delay and some prejudice to the defendant.[3] What amounts to "prejudice," such as will bar the right to assert a claim after the passage of time, depends upon the facts and circumstances of each case, but it is generally held to be anything that places

---

1. Berman v. Leckner, 193 Md. 177, 66 A. 2d 392. And it must be remembered that equity courts, on proper occasions, apply statutes of limitation by analogy in determining what constitutes laches. Brashears v. Collison, supra.
2. Loughran v. Ramsburg, 174 Md. 181, 197 A. 804.
3. Akin v. Evans, 221 Md. 125, 156 A. 2d 219.

him in a less favorable position.[4] And, since laches implies negligence in not asserting a right within a reasonable time after its discovery, a party must have had knowledge, or the means of knowledge, of the facts which created his cause of action in order for him to be guilty of laches.[5]

Having in mind the above principles of law, we proceed to consider the excuses offered by the appellant for his delay in instituting the present proceedings. The signatures of the nominating petitions were published on May 30, 1962; hence the appellant either had personal knowledge of such petitions, or was chargeable with knowledge thereof, as of that date. His right to challenge the adequacy of said petitions, as provided by Section 67 (f), was not affected by the fact that the nominee-appellees did not pay the publication costs until August 31st and September 5th. He was at liberty to assert the alleged inadequacy at any time subsequent to the filing of the petitions which occurred on April 30th. Instead, he awaited until the very day, September 5th, when the last of the nominee-appellees paid for the publication to bring forth his claim of inadequacy. It is obvious that the duty imposed upon the Board, by Section 67 (f) when the sufficiency of nominating petitions is questioned, to "verify the number of legitimate signatures" thereon, required time. After performing its duty and concluding that the petitions contained a proper number of legitimate signatures, the Board notified appellant, on September 24th, that it intended to place the names of the nominees on the ballot. Suit was instituted in the trial court on September 25th (and by the time the case was heard in this Court, the Board had had the absentee ballots printed and the voting machines prepared with the names of the nominees included thereon).

Under the above circumstances, we think it is clear that appellant's delay in questioning the adequacy of the petitions was unreasonable and unjustified, and the nominee-appellees were

---

4. Roberto v. Catino, 140 Md. 38, 116 A. 873; Akin v. Evans, supra, and cases therein cited.

5. Berman v. Leckner, supra; Waters v. Order of the Holy Cross, 155 Md. 146, 142 A. 297.

placed in a less favorable position thereby. Had he promptly asserted his claim, the whole question as to whether or not the names of the nominees were to be placed upon the ballot could have been determined within a reasonable time, long before the election on November 6th. With this question undetermined until just a few days before the election, the nominees were placed in the unfortunate situation where prospective constituents did not know whether or not the names of the nominees would be on the ballot, and they (the nominees) did not know whether they would be justified in making additional legitimate expenditures in promotion of their candidacies.

The appellant fails to make clear his claimed excuse of "the pendency of legal proceedings involving the same or similar facts." If he relies upon the case *Van Gorder v. Board, supra,* (wherein the nominee-appellees herein challenged the requirement that they pay allegedly excessive publication costs) or *Tyler v. Secretary of State, supra,* (a case in which it was contended that certain referendum petitions were inadequate), it is sufficient to say that neither of them prevented his challenging the adequacy of the petitions herein involved at any time after their filing on April 30th.

It is true that the statute, Section 67 (f), does not contain a time limitation in which to question the adequacy of nominating petitions; but we agree with Judge Raine, and hold that it is implicit in the statute that such questioning must be done within a reasonable time after the filing of the petitions.

The Courts of our sister states have made rulings similar to our holding above. An amendment to the constitution of Massachusetts provided for the possible enactment by vote of the people of laws initiated by ten qualified voters. The law provided that any such voter should sign on the petition "his name as registered." Two proposed laws were initiated and were about to be placed upon the ballot to be submitted to popular vote at the oncoming election. There being a slight variance between one of the signatures and the name of the signer "as registered," petitions were filed in an attempt to prevent the proposed laws from going upon the ballot. In the

course of its opinion, the Court stated: "* * * we think that the petitioners were guilty of laches in not discovering and taking advantage of that variance until after many thousands of signatures had been collected and the General Court had acted upon the proposed laws. * * * Though there doubtless was no actual knowledge on the part of the petitioners, investigation would have been easy, and there was complete failure to 'embrace opportunity to ascertain facts.'" *Bowe v. Secretary of the Commonwealth,* 69 N. E. 2d 115, 123 (Mass.).

In Michigan, a statute required that a petitioner for a recount of votes cast at an election proceed "without unnecessary delay." The Supreme Court of that State held that a delay until December 26th before filing a petition for a recount of the ballots cast on November 6th was "inexcusable laches." *Andrews v. Carney,* 41 N. W. 923, 926 (Mich.). And compare *Wichersham v. State Election Board,* 357 P. 2d 421, 424 (Okl.).