**REPORTED**

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No.  2393

September Term, 2012

_____

RAMONA MOORE BAKER

v.

MARTIN O'MALLEY

_____

Meredith,
Berger,
*Eldridge, John C.,
        (Retired, specially assigned),


JJ.

_____

Opinion by Meredith, J.

_____

Filed: May 27, 2014


*Judge Eldridge participated in the argument of
this case but did not participate in the decision.

On October 16, 2012, Ramona Moore Baker, appellant, filed suit in the Circuit Court for Anne Arundel County against Governor Martin O'Malley, appellee, seeking a writ of mandamus ordering the Governor to issue her a commission to serve as a judge of the Orphans' Court for Baltimore City based upon the certified results of the 2010 general election. In that election, for which results were certified on December 1, 2010, Ms. Baker received sufficient votes to be one of three people chosen by the voters of Baltimore City to serve as judges of the Orphans' Court for Baltimore City. But, in that same election, the voters of Baltimore City voted to approve an amendment to the Maryland Constitution requiring judges of the Orphans' Court for Baltimore City to be attorneys "who have been admitted to practice law in this State and are members in good standing of the Maryland Bar." Md. Const., Art. IV, § 40(b). Ms. Baker is not an attorney, and does not meet that criterion. Acting upon advice from the Attorney General of Maryland, Governor O'Malley declined to issue a commission to Ms. Baker, and eventually appointed another person who is a Maryland attorney to serve on the Orphans' Court in the position that would have otherwise been held by Ms. Baker.

In response to the present suit, which Ms. Baker filed in October 2012, the Governor's counsel filed a motion to dismiss, arguing that Ms. Baker's claims were barred by the statute of limitations and laches, and were otherwise without legal merit. After conducting a hearing, the circuit court agreed that the case should be dismissed. Ms. Baker then noted this appeal.

## QUESTIONS PRESENTED

Ms. Baker presents three questions for review:

1. Whether the trial court erred in dismissing Appellant's petition for a writ of mandamus on the grounds that Appellant lacked a clear legal right to the issuance of the writ[?]

2. Whether the trial court erred in dismissing Appellant's petition on the grounds that the petition was time barred[?]

3. Whether the trial court erred in dismissing Appellant's petition on the grounds that her action for common law damages was barred by the doctrine of governmental immunity[?]

For the reasons stated below, we conclude that the court did not err in dismissing Ms. Baker's complaint as barred by laches, and we affirm the judgment of the circuit court.

## FACTS AND PROCEDURAL HISTORY

Prior to the 2010 general election, the only eligibility requirements for the office of judge on the Orphans' Court for Baltimore City were Maryland citizenship and residency in Baltimore City for at least one year. *See* Md. Const. Art. IV, § 40(a). In the November 2010 election, however, voters approved an amendment to the Maryland Constitution that added to the minimum qualifications for judges on the Orphans' Court for Baltimore City a requirement that such judges be attorneys. The amended provision reads:

> The qualified voters of the City of Baltimore shall elect three Judges of the Orphans' Court for Baltimore City who shall be citizens of the State and residents, for the twelve months preceding, in Baltimore City and *who have been admitted to practice law in this State and are members in good standing of the Maryland Bar*.

Md. Const. Art IV, § 40(b) (emphasis added).

Ms. Baker is not an attorney; nor has she ever been a member of the Maryland Bar. Prior to the passage of the 2010 amendment, however, Ms. Baker met the minimum

qualifications for the office of judge on the Orphans' Court for Baltimore City, and she was one of three candidates on the ballot for the three positions on that court. Had the constitutional amendment not been approved by the voters in the November 2010 election, there would have been no question about Ms. Baker meeting the minimum qualifications for the office.

On December 1, 2010, the Board of State Canvassers certified to the Governor the results of the November 2010 election — including both the ratification of the constitutional amendment and the fact that Ms. Baker was one of the three candidates to receive enough votes to be elected to one of the three positions on the Orphans' Court for Baltimore City. Pursuant to Md. Const., Art. IV, § 11, Governor O'Malley issued commissions to the two candidates who met the newly approved requirement of being Maryland attorneys. But the Governor declined to issue a commission to Ms. Baker, and instead, requested an opinion from the Attorney General as to whether Ms. Baker should receive her commission.

On December 13, 2010, the Attorney General issued a written opinion to the Governor, advising the Governor not to issue a commission to Ms. Baker. *See* 95 Op. Att'y Gen. Md. 209 (2010). The opinion was signed by Attorney General Douglas F. Gansler and Chief Counsel Robert N. McDonald (who is currently a Judge serving on the Maryland Court of Appeals). The opinion stated:

> You have asked for our opinion concerning the issuance of a commission for a position on the Orphans' Court for Baltimore City. At the election this past November, the voters approved a constitutional amendment that requires judges of the Orphans' Court for Baltimore City to be members

of the Maryland bar. At the same election a candidate not admitted to practice law in Maryland received a sufficient number of votes to be elected to the Orphans' Court for Baltimore City. You ask whether the State Constitution permits the issuance of a commission to that individual under these circumstances.

**In our opinion, the issuance of a commission in these circumstances would be at odds with the Maryland Constitution. Accordingly, the commission should not be issued.**

95 Op. Att'y Gen. at 209 (emphasis added).

The Attorney General's opinion noted that the amendment to the Maryland Constitution requiring membership in the Maryland bar — Article IV, § 40(b) — became effective on December 1, 2010, pursuant to Article XIV, § 1, of the Constitution. That is the same date that the results of the November election were certified to the Governor. The Attorney General's opinion observed that "[t]he general rule is that eligibility for an office is a continuing requirement," *id*. at 211, and the opinion further stated:

> There is no dispute that Ms. Baker garnered the requisite number of votes to win one of the three Orphans' Court seats at issue in the election. There is also no dispute that she lacks one of the constitutional qualifications for the position. Accordingly, as indicated above, she cannot serve as an Orphans' Court judge in Baltimore City. In the circumstances, the issuance of a commission to her, although a ministerial act, would be at odds with the State Constitution.
>
> * * *
>
> . . . [I]t is our opinion that a commission should not be issued to a successful candidate who indisputably lacks a continuing qualification for Orphans' Court judge in Baltimore City.

*Id*. at 213-14.

4

On the basis of the above-quoted opinion of the Attorney General, the Governor refused to issue a commission to Ms. Baker to become a judge on the Orphans' Court for Baltimore City.

On October 16, 2012, Ms. Baker filed the present civil action against the Governor in the Circuit Court for Anne Arundel County. Ms. Baker sought a writ of mandamus compelling Governor O'Malley to issue her a commission to serve as a judge on the Orphans' Court, and she also claimed money damages for the loss of salary during the time she had been excluded from the court. Appellee moved to dismiss the petition, and argued: 1) the suit was barred by the statute of limitations and laches; 2) Ms. Baker was not entitled to the writ; and 3) appellee was immune from suit pursuant to the Maryland Tort Claims Act (Maryland Code, State Government Article § 12-101 *et seq.*).

In her opposition to the motion to dismiss, Ms. Baker apprised the circuit court that she had previously filed suit against the Governor and others in the Circuit Court for Baltimore City on June 1, 2011, but, because she never served the defendants, that suit was dismissed without prejudice pursuant to Maryland Rule 2-507(b) on January 4, 2012. In the meantime, on July 25, 2011, the Governor had appointed attorney Michele Lowenthal to fill the position of the third judge on the Orphans' Court for Baltimore City, and Ms. Lowenthal had taken the seat which Ms. Baker sought.

On January 14, 2013, the Circuit Court for Anne Arundel County held a hearing on the Governor's motion to dismiss the complaint in the present case. At the conclusion of the

5

hearing, the circuit court granted appellee's motion and indicated it accepted all of the arguments made by the appellee, including the statute of limitations, laches, and the lack of any basis for the issuance of the requested writ of mandamus, all of which would obviate any claim for money damages for loss of salary. This appeal followed.

## DISCUSSION

The Court of Appeals has described our standard of review of the grant of a motion to dismiss as follows: "Upon appellate review, the trial court's decision to grant such a motion is analyzed to determine whether the court was legally correct." *RRC v. BAA*, 413 Md. 638, 644 (2010).

The circuit court agreed with appellee's assertion that Ms. Baker's claims for relief were barred by the applicable statute of limitations as well as the doctrine of laches. Appellee asserts that the applicable statute of limitations for all claims related to an election is found in Maryland Code (2003, 2010 Repl. Vol.), Election Law Article ("EL"), § 12-202, which provides that a registered voter may seek judicial relief concerning "an issue arising in an election," and further states that such claims must be filed within the earlier of (1) "10 days after the act or omission or the date the act or omission became known to the petitioner," or (2) "7 days after the election results are certified." (An even shorter time limit may apply if the election was "a gubernatorial primary or special primary election." *Id*.) Appellee further contends that, even if Ms. Baker's claims are not barred by the statutory time limit set forth in EL § 12-202(b), her claims are nevertheless barred by laches because

6

this suit was filed nearly two years after she became aware that the Governor was not issuing her a commission.

Ms. Baker asserts that her petition for a writ of mandamus was timely and not barred by either the statute of limitations or the doctrine of laches. She contends that EL § 12-202(b) is inapplicable because EL § 12-201 provides: "This subtitle applies to an issue arising *in* an election conducted under this article." (Emphasis added.) She argues that she is not challenging an act or omission that arose "in an election," but instead is complaining about the appellee's actions *after* the election. Furthermore, she cites *Philip Morris v. Angeletti*, 358 Md. 689, 709 (2000), for the proposition that petitions for a writ of mandamus are "not ordinarily subject to specific time requirements or other like restrictions," and she contends that, even if laches could apply to a petition for writ of mandamus, appellee cannot demonstrate the prejudice required to invoke the bar of laches.

In our view, the statute of limitations set forth in EL § 12-202 is not a direct bar to Ms. Baker's claims. In her complaint, she did not assert a claim for judicial relief *pursuant to* EL § 12-202. Instead, she asked for a common law writ of mandamus and money damages for the salary she had not received.

By its express terms, EL § 12-202(a) provides a statutory cause of action for a registered voter to pursue judicial relief "[i]f no other timely and adequate remedy is provided by [the Election Law Article]." In other words, the statutory remedy provided by

7

EL § 12-202 is supplemental to — rather than pre-emptive of — other remedies that might

be available to a candidate.  The statute provides:

> **If no other timely and adequate remedy is provided by this article, a registered voter may seek judicial relief** from any act or omission relating to an election, whether or not the election has been held, on the grounds that the act or omission:
>
> (1) is inconsistent with [the Election Law Article] or other law applicable to the elections process; and
>
> (2) may change or has changed the outcome of the election.

(Emphasis added.)

Although Ms. Baker might have been able to construct a claim seeking "judicial relief

from [an] act or omission relating to an election," she based the claims for relief in her suit

on common law remedies, not EL §12-202.  Consequently, the time limits for filing a claim

under EL § 12-202 are not directly applicable to bar Ms. Baker's complaint.

Nevertheless, the very short time limits for filing a suit challenging an aspect of an

election pursuant to EL § 12-202(b) are evidence of this State's public policy that claims for

judicial relief relative to an election must be prosecuted without delay.  In *Liddy v. Lamone*,

398 Md. 233, 250 (2007), the Court of Appeals emphasized that "'any claim against a state

electoral procedure must be expressed expeditiously.'" (Quoting *Ross v. State Bd. of

Elections*, 387 Md. 649, 671 (2005).)  Because of the urgency of resolving uncertainties

about elections expeditiously, the very short time limits set forth in EL § 12-202(b) for filing

claims for judicial relief are not unreasonable, and they reflect the public policy of this State that all such claims must be presented on an urgent basis.

The imperative of very prompt action in election cases led the Court of Appeals to hold that election claims were barred by laches in both *Ross* and *Liddy*, where the delay in seeking judicial relief was measured in days (unlike the delay of nearly two years in the present case). In both *Ross* and *Liddy*, the Court of Appeals held that the circuit court judges had erred in failing to hold that the suits were barred by laches.

In *Ross*, candidate Ross filed suit three days after election day, and asked the court to enjoin the election officials from certifying his opponent as the winner because, Ross claimed, his opponent was disqualified from being a candidate as a consequence of campaign finance irregularities. Although the suit was filed by Ross well before the election results were certified, and arguably within ten days after he had knowledge of the grounds for complaint, *see Ross,* 387 Md. at 668 n.8, the Court of Appeals held that the circuit court should have held, as a matter of law, that Ross's suit was barred by laches.

Similarly, in *Liddy*, 398 Md. at 252, the Court of Appeals acknowledged that the plaintiff's suit "may have been [filed] within the governing statutory [time limit] provisions outlined in the Election Law Article," but the Court nevertheless held that the delay was sufficiently prejudicial that the case should have been dismissed on the basis of laches rather than addressed on the merits as it was by the circuit court judge.

Applying the principles expressed by the Court of Appeals in *Ross* and *Liddy* to the present case, we conclude that, even though Ms. Baker's claims were not subject to the time limits imposed by EL § 12-202(b), the circuit court's alternative ruling that Ms. Baker's claims are barred by laches was clearly correct. The Court of Appeals observed in *Ipes v. Board of Fire Commissioners of Baltimore*, 224 Md. 180, 183 (1961): "That laches is a proper ground for refusing to issue a writ of mandamus seems to be a proposition of almost universal recognition."

In *Ross*, *supra*, 387 Md. at 668, the Court of Appeals stated: "Laches 'is a defense in equity against stale claims, and is based upon grounds of sound public policy by discouraging fusty demands for the peace of society.'" (Quoting *Parker v. Bd. of Election Supervisors*, 230 Md. 126, 130 (1962).) *Accord State Center, LLC, et al. v. Lexington Charles Limited Partnership, et al.*, ____ Md. ____, No. 12, September Term 2013, Slip op. at 129 (filed March 27, 2014). The *Ross* Court also noted: "'There is no inflexible rule as to what constitutes, or what does not constitute, laches; hence, its existence must be determined by the facts and circumstances of each case.'" *Id.* at 669 (quoting *Parker*, *supra*, 230 Md. at 130). "It is, however, well settled that laches 'applies when there is an unreasonable delay in the assertion of one's rights and that delay results in prejudice to the opposing party.'" *Liddy, supra*, 398 Md. at 244 (quoting *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 360 Md. 76, 117 (2000)). "Whether the elements of laches have been established

10

is [a question] of fact, while the question of whether in view of the established facts, laches should be invoked, is a question of law." *Id.* at 245-46 (internal citations omitted).

Appellee contends that Ms. Baker's claims in this case are barred by laches because she delayed nearly two years before filing her petition. Between the time of the election and the filing of Ms. Baker's complaint, appellee named a replacement judge. The judges of the Orphans' Court to whom the appellee issued commissions exercised judicial power and conducted the official business of the court. The litigants in that court have relied upon the decisions of those judges — including Judge Lowenthal — in order to adjudicate and put to rest legal disputes. Additionally, the electorate of Baltimore City has relied upon the results of the November 2010 election, including the ratification of the constitutional amendment requiring judges of the Orphans' Court for Baltimore City to be Maryland attorneys. Appellee asserts that granting Ms. Baker's petition at this late stage would impair the integrity of the electoral process.

We agree with the circuit court's conclusion that Ms. Baker's petition for a writ of mandamus is barred by laches. Although Ms. Baker points out that she initially filed a petition on June 1, 2011 — approximately five and one-half months after Governor O'Malley declined to issue her a commission — under *Ross* and *Liddy*, a delay of even that magnitude would constitute an unreasonable delay in challenging a governor's failure to issue a commission after an election. But, even with respect to the complaint she filed on June 1, 2011, Ms. Baker did not prosecute her claims with diligence, and that suit was dismissed on

11

January 4, 2012, because she had not yet served process on any of the defendants by that point in time. Ms. Baker thereafter delayed another ten months before filing the present suit on October 16, 2012, at which point nearly two years had passed since the November 2010 election. Such a delay in pursuing a challenge to the Governor's decision not to issue a commission is patently unreasonable and prejudicial to the Governor, the electorate, and other candidates. The circuit court properly invoked laches to dismiss the suit. Consequently, we need not consider the remaining issues raised by the appellant.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**